**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MASSIEL VARGAS,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | **PLAINTIFF DEMANDS** |
| MONTEFIORE MEDICAL CENTER, | **A TRIAL BY JURY** |
| Defendant. |  |

-----------------------------------------------------------X

Plaintiff MASSIEL VARGAS, ("Plaintiff"), by and through her attorneys PHILLIPS &

ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant,

MONTEFIORE MEDICAL CENTER, upon information and belief, alleges and avers as follows:

## NATURE OF THE CASE

1. Plaintiff is a young woman who worked as a Nursing Assistant for Montefiore Medical
   Center ("Montefiore") for years, while also attending to her disabled brother when at home.

2. While on the job, Montefiore's management staff treated Plaintiff's caregiving
   responsibilities with callous and indifference. For example, a nursing manager, upset with
   Plaintiff for turning down extra shifts, chastised Plaintiff saying: "I understand that he's
   your brother, but you're not his parent… he's not your responsibility."

3. On multiple occasions, Montefiore's management denied Plaintiff duly requested leave. A
   nursing manager texted in response to one such request, "I don't think we can grant u
   leave…we will need someone for the floor…it will mostly likely be denied," just before
   denying the request, inaccurately telling Plaintiff that she was ineligible for leave.

4. Montefiore failed to engage in an interactive process with Plaintiff to explore reasonable

accommodations, failed to notify her of her federal, state and city rights under the anti-discrimination laws or federal FMLA rights, and failed to grant her accommodation requests such as intermittent leave, a transfer, or a part-time schedule.

5.  Ultimately, Montefiore's discrimination and denial of Plaintiff's federal rights resulted in her being constructively discharged.

6.  Months later, Plaintiff's caregiving responsibilities significantly decreased.  Around the same time, an employee in Montefiore's Human Resources department contacted Plaintiff regarding an open nursing attendant position.  Plaintiff, applied for the job, was offered the job, and accepted the job.

7.  Yet, thereafter, Montefiore withdrew the employment offer, discovering in its files that upon termination, Montefiore had coded Plaintiff "ineligible for hire," due to "Domestic Responsibilities."

8.  The U.S. Equal Employment Opportunity Commission ("EEOC") conducted an investigation into Plaintiff's allegations of discrimination and determined that Montefiore "…withdrew [Plaintiff's] offer of employment because of her association with her disabled sibling, discriminating against her in violation of the ADA."

9.  Plaintiff brings this action alleging that the Defendant has violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, as amended, ("ADA"), the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et. seq.* ("FMLA"), the New York State Human Rights Law, New York State Executive Law §§ 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq.* ("NYCHRL").

10. Plaintiff seeks damages to redress the injuries she has suffered as a result of being

discriminated on the basis of her brother's disability, her caregiver status, being denied accommodations and FMLA leave, and being retaliated against and constructively discharged by Montefiore.

## **JURISDICTION, VENUE AND PROCEDURAL REQUIREMENTS**

11. Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

12. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

14. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on August 22, 2019, within 300 days of her discriminatory termination, (b) receiving a Notice of Right to Sue from the EEOC on June 30, 2022, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A;"** a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as **"Exhibit B."**

## **PARTIES**

15.     At all times relevant, Plaintiff was a resident of the State of New York, Bronx County.

16.     Plaintiff is a 29-year-old woman.

17.     Plaintiff is a caregiver for her 33-year-old brother who has a mental health disability.

18.     At all times relevant, Defendant MONTEFIORE MEDICAL CENTER ("Montefiore") was and is a domestic non-for-profit corporation registered to do business in New York State and is headquartered at 111 East 210th Street, Bronx, NY, 10467.

19.     Defendant Montefiore is an integrated healthcare system encompassing ten hospitals and four primary care and outpatient centers in the New York City Metropolitan area.

20.     Throughout her employment, Plaintiff worked at Montefiore's Moses Campus, Einstein Campus, and The Children's Hospital.

21.     Defendant Montefiore employs at least fifteen (15) or more employees.

22.     Defendant Montefiore was an "employer" within the meaning of the ADA, FMLA, NYSHRL, and NYCHRL.

23.     At all times relevant, Plaintiff was an employee of Defendant Montefiore.

## MATERIAL FACTS

### Background

24.     On or about December 2013, Plaintiff graduated from Highbridge Community Life Center's Certified Nursing Assistant program in Bronx, NY.

25.     On or about January 2014, Plaintiff passed the NY State Nurse Aide Exam and became a licensed Certified Nursing Assistant.

26.     On or about September 8, 2014, Plaintiff began working at Montefiore's Moses Campus as a part-time Nursing Attendant.

27.     Approximately one year later, Plaintiff was transferred to Montefiore's Einstein Campus

and began working full-time.

28.    On or about October 9, 2016, Plaintiff was transferred to Montefiore's Children's Hospital and was promoted to Senior Nursing Attendant.

29.    As a full-time employee, Plaintiff worked approximately 37.5 hours per week, earning approximately $22/hour and $33/hour for any overtime worked.

30.    Plaintiff performed her duties competently and received six salary increases throughout her employment, in recognition of her hard work.

**Caregiver Responsibilities at Home**

31.    Plaintiff's brother was diagnosed with schizophrenia as a young adult.

32.    Schizophrenia is a long-term mental health disability for which a combination of therapy and medications are used to manage symptoms. Family and/or community support are frequently needed as well.

33.    Since her brother's diagnosis, Plaintiff has acted as a caregiver for her adult brother.

34.    Plaintiff assisted her brother in activities of daily living such as grooming and hygiene, bathing, eating, transportation, and communicating with medical providers.

**Harassment, Discrimination, Denials of Rights**

35.    In early 2015, Obiageli Ubankama, Administrative Nursing Manager, ("Ubankama") chastised Plaintiff when she declined shifts to take care of her brother: "I understand that he's your brother, but you're not his parent. It's a lot of responsibility, but he's not your responsibility."

36.    Plaintiff was upset by Ubankama's comments and felt singled out and embarrassed by being criticized for engaging in caretaking duties.

37.    Ubankama did not inform Plaintiff about the possibility of requesting FMLA, which would

allow her to take time off each week and manage her work and caretaking obligations.

38.     Unaware there were other less onerous options, in or around April 2016, Plaintiff took
        continuous FMLA leave for approximately 5 weeks, to provide caretaking duties for her
        brother.

39.     Plaintiff thereafter returned to work and continued to perform her job diligently.

40.     In or around Spring 2017, Plaintiff's brother experienced a flare-up that required increased
        care.

41.     Plaintiff did not want to take continuous leave, but to arrange for regular time off each
        week that would allow her to manage her job and caretaking duties.

42.     On or about May 8, 2017, Plaintiff informed Alison Clifford, Nursing Manager,
        ("Clifford") that she would like to apply for intermittent FMLA.

43.     Clifford had the authority to hire, fire, or affect the terms and conditions of Plaintiff's
        employment, or to otherwise influence the decisionmaker of the same.

44.     Clifford texted Plaintiff: "I don't think we can grant u leave…we will need someone for
        the floor…it will mostly likely be denied."

45.     A few days later, Plaintiff reiterated her request to apply for FMLA.

46.     Clifford informed Plaintiff that she was ineligible for leave, as FMLA requires one year of
        service with an employer.

47.     Clifford's denial of Plaintiff's request for FMLA leave was a clear violation of federal law.

48.     Plaintiff met all the statutory requirements under the FMLA, as she had worked for
        Montefiore for over 1 year and had over 1,250 hours of service in the preceding 12 months.

49.     Clifford denied Plaintiff's reasonable disability-caregiver accommodation request.

50.     Plaintiff was left feeling hopeless and desperate about her situation, but she carried on with

her job and caretaking duties, resulting in much stress and anxiety.

51.    Clifford did not speak with Plaintiff to explore other options for her.

52.    About a year later, Plaintiff approached her supervisor again to request FMLA leave.

53.    Clifford immediately rejected Plaintiff's request.

54.    For the second time, Clifford denied Plaintiff's reasonable disability-caregiver accommodation request.

55.    Plaintiff felt despair and hopelessness that her request was being denied.

56.    Clifford did not speak with Plaintiff to explore other options for her.

57.    Shortly after this conversation, Clifford went on maternity leave and Tania Shiminski-Maher ("Shiminski-Maher"), Clinical Director of Nursing, became Plaintiff's supervisor.

58.    Shiminski-Maher had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

59.    Having been previously denied intermittent FMLA, Plaintiff asked Shiminski-Maher to approve her request to take continuous FMLA leave. This request was approved.

60.    From June 8 to August 4, 2018, Plaintiff used her FMLA leave to provide care for her brother.

61.    As Plaintiff's FMLA leave period concluded, Plaintiff understood that her brother's current condition was going to require increased care during this period.

62.    Plaintiff believed that she could successfully juggle her caregiver responsibilities and continue performing her job competently if she had a part-time schedule during this period.

63.    Plaintiff approached Shiminski-Maher to explain her situation and request a part-time schedule to accommodate her caregiving duties.

64. Plaintiff told Shiminski-Maher that, if necessary, she was willing to transfer to a different unit or Montefiore facility

65. Shiminski-Maher rejected Plaintiff's request entirely and stated, in sum or substance, that there were no open part-time or per diem positions for her at any of Montefiore's facilities.

66. For a third time, Plaintiff was denied her reasonable disability-caregiver accommodation request.

67. Shiminski-Maher did not suggest alternatives, did not attempt to compromise on a flexible schedule that would be workable, and did not inform Plaintiff any options for leave that would allow her to maintain her employment.

68. Plaintiff was very upset about being in this difficult position.  Plaintiff did not believe she should be forced to choose between her job and caring for her brother.

69. Feeling she was left with no choice, on August 13, 2018, Plaintiff emailed Shiminski-Maher to inform her that she would be resigning from her position.

70. In the same email, Plaintiff reiterated her request to work part-time to care for her brother: "I had interest in transferring to a per diem position or even part time but that is not available at the moment." This was Plaintiff's last-ditch effort to be provided a reasonable accommodation.

71. Instead of granting an accommodation, or exploring reasonable solutions related to her caregiving of her disabled brother, Plaintiff was forced to resign.

72. Plaintiff's last day working for Montefiore was June 7, 2018.

73. Plaintiff felt traumatized by her experience.  She developed fear that if she sought new employment given her circumstances, she would be rejected and treated dismissively as Montefiore had done.

**Retaliation**

74.     In or around October 2018, Plaintiff's availability to work full-time increased dramatically as she no longer lived with her brother.

75.     On or about December 2018, A.J. LNU ("A.J."), a staffer in Montefiore's Human Resources Department, contacted Plaintiff suggesting she apply for a Certified Nursing Attendant position at Montefiore's Einstein Center.

76.     Plaintiff, needing an job, submitted an application.

77.     On or about December 27, 2018, Tunde Osibogun ("Osibogun"), a staffer in the Montefiore Human Resources office, called Plaintiff to offer her the full-time Certified Nursing Attendant position. Plaintiff promptly accepted.

78.     After Plaintiff accepted the offer, Osibogun informed Plaintiff that he would provide her with a start date soon.

79.     On February 21, 2019, having not heard back, Plaintiff emailed Osibogun.  Plaintiff inquired as to her start date, but Osibogun failed to respond.

80.     On March 6, 2019, Plaintiff again emailed Osibogun to inquire about her start date, but Osibogun failed to respond for the second time.

81.     On March 26, 2019, Plaintiff called the Montefiore Compliance Hotline to inquire as to her start date and report Osibogun for his unresponsiveness. The staffer in the Compliance Department promised to follow-up with Plaintiff.

82.     On March 29, 2019, Plaintiff, desperate for her job, emailed Osibogun again, but Osibogun failed to respond for the third time.

83.     Finally, in or around April 2019, Eileen Montalto, Director of Human Resources, implied, in sum or substance,-that the reason Plaintiff was not being rehired for that position was

because Montefiore did not process her resignation until March 2019.

84.  Having no understanding of what that meant, Plaintiff remained confused about her employment status.

85.  Montalto did not explain why Plaintiff had not been given a start date after she accepted Montefiore's offer of employment, nor an explanation for why Plaintiff's resignation had not been processed for seven months.

86.  Shortly thereafter, Plaintiff called Osibogun, hoping he could provide additional information about the job she very much needed and was eager to begin.

87.  Osibogun told Plaintiff, in sum or substance, that another candidate had been selected for the position. By way of explanation, Osibogun recited in detail, the days she had taken off pursuant to the FMLA and also cited her resignation.

88.  Plaintiff told Osibogun that she did not see how her leave was relevant to the new position she had been offered. Osibogun refused to speak with her further.

89.  Upon information and belief, Montefiore rescinded its offer of employment because of her caregiving status and her lawful right to take FMLA related to that status.

**EEOC Findings**

90.  On August 22, 2019, Plaintiff filed a Charge of Discrimination with the EEOC.

91.  On May 04, 2020, Montefiore submitted a Position Statement, admitting that Plaintiff had not received a start-date because Montefiore had marked her as "ineligible for rehire."

92.  In or around April 6, 2022, the EEOC issued a Letter of Determination that found that Plaintiff's supervisor Clifford marked her as "ineligible for rehire" due to Plaintiff's "domestic responsibilities" and that "the investigation also showed, that contrary to Respondent's defense, Respondent has re-hired other individuals who had previously been

coded as 'ineligible for rehire.'"

93. The EEOC concluded that "Respondent's asserted defenses do not withstand scrutiny with respect to Charging Party's claim under the ADA… there is reasonable cause to believe that Respondent withdrew Charging Party's offer of employment because of her association with her disabled sibling, discriminating against her in violation of the ADA."

**Harm to Plaintiff**

94. Plaintiff felt humiliated, offended, degraded, victimized, embarrassed, and depressed after being denied an accommodation and being constructively discharged because of her brother's disability.

95. As a result of the discriminatory acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entailed.

96. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

97. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

98. Montefiore's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

99. As such, Plaintiff demands punitive damages.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER THE ADA**

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

101.  Plaintiff claims Montefiore violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

102.  Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

103.  The foregoing definition includes associational disability discrimination such as: "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

104.  Montefiore engaged in discriminatory conduct and practices as described herein because of her brother's disability.

**AS A SECOND CAUSE OF ACTION**
**RETALIATION UNDER THE ADA**

105.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

106.  42 U.S.C. § 2000e-3(a) states that it shall be an unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, …

107.  The above section forbids retaliation for engaging in protected activities, including complaining of disability discrimination.

108.  Montefiore engaged in unlawful discriminatory practices by constructively discharging Plaintiff because she complained of disability discrimination, a protected activity, under the law.

## AS A THIRD CAUSE OF ACTION
### VIOLATION OF THE FMLA

109.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

110.  The FMLA provides that an eligible employee is entitled to take up to 12 weeks of leave in any 12-month period because of a serious health condition that makes the employee unable to perform the essential functions of their position.

111.  Section 29 U.S.C. 2615 (a) (1) of the FMLA states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

112.  At all relevant times, Plaintiff was an eligible employee under the definitional terms of the FMLA.

113.  Plaintiff informed Montefiore, with whom she had been employed for at least twelve months pursuant to the requirements of the FMLA, that she intended to take an FMLA leave to take care of her brother.

114.  Further, Plaintiff had at least 1,250 hours of service with Montefiore during the prior twelve months.

115.  Montefiore willfully denied Plaintiff's FMLA leave requests on three separate occasions, despite the fact that Plaintiff was an eligible employee.

## AS A FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE FMLA

116.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

117.    Section 29 U.S.C. 2615 (a) (2) of the FMLA states, "[i]t shall be unlawful for any employer

to discharge or in any other manner discriminate against any individual for opposing any

practice made unlawful by this subchapter."

118.    At all relevant times, Plaintiff was an eligible employee under the definitional terms of the

FMLA.

119.    Montefiore willfully discriminated and retaliated against Plaintiff for taking FMLA leave,

and constructively discharged her for taking FMLA leave and marked her as "ineligible for

rehire" at Montefiore.

## AS A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

120.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint as if more fully set forth herein at length.

121.    Executive Law § 296 provides that:

1. It shall be an unlawful discriminatory practice: (a) For an
employer or licensing agency, because of an individual's age,
race, creed, color, national origin, sexual orientation, gender
identity or expression, military status, sex, disability,
predisposing genetic characteristics, familial status, marital
status, status as a victim of domestic violence, to refuse to hire
or employ or to bar or to discharge from employment such
individual or to discriminate against such individual in
compensation or in terms, conditions or privileges of
employment

122.    9 NYCCR § 466.14 provides that:

Where the term 'unlawful discriminatory practice' is used in the Human Rights
Law, it shall be construed to prohibit discrimination against an individual because
of that individual's known relationship or association with a member or members

of a protected category covered under the relevant provisions of the Human
Rights Law.

123. Montefiore engaged in an unlawful discriminatory practice by constructively discharging
Plaintiff and deeming her "ineligible for rehire" because she went on FMLA leave and
complained of discrimination.

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
this Complaint as if more fully set forth herein at length.

125. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for
any person engaged in any activity to which this section applies to retaliate or discriminate
against any person because he or she has filed a complaint, testified, or assisted in any
proceeding under this article."

126. Montefiore has engaged in an unlawful discriminatory practice in violation of the
NYSHRL when it constructively discharged Plaintiff due to her complaints of disability
discrimination and deemed her "ineligible for rehire."

## AS A SEVENTH CAUSE OF ACTION
## DISABILITY AND CAREGIVER DISCRIMINATION UNDER THE NYCHRL

127. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
this Complaint.

128. The New York City Administrative Code §8-107(1) provides that: "[i]t shall be an unlawful
discriminatory practice: (a) For an employer or an employee or agent thereof, because
of…disability…caregiver status…to refuse to hire or employ or to bar or to discharge from
employment such person or to discriminate against such person in compensation or in
terms, conditions or privileges of employment."

129.   The NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability recognizes: "The NYCHRL's anti-discrimination protections extend to prohibit unlawful discriminatory practices based on a person's relationship to or association with a person with an actual or perceived disability."

130.   Montefiore engaged in unlawful discriminatory practices in violation of the NYCHRL by discriminating against Plaintiff because of her brother's disability and her caregiver status.

## AS A EIGHTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

131.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

132.   The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activities.

133.   Montefiore engaged in unlawful discriminatory practices in violation of the NYCHRL by harassing and discriminating against Plaintiff, and ultimately constructively discharging her, because of Plaintiff's opposition to the unlawful employment practices of Montefiore.

## JURY DEMAND

134.   Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.   Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA, FMLA, NYSHRL, and NYCHRL in that Defendant discriminated against Plaintiff on the basis of her brother's disability, her caregiver status, and for taking FMLA leave and for her complaints of discrimination.

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make her whole for any losses suffered as a result

of such unlawful employment practices;

C.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.      Awarding Plaintiff punitive damages;

E.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.


Dated: New York, New York
       September 9, 2022



                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**


                          By:   _____
                                Michelle A. Caiola
                                *Attorney for Plaintiff*
                                45 Broadway, Suite 620
                                New York, New York 10006
                                T: (212) 248-7431
                                F: (212) 901 - 2107
                                mcaiola@tpglaws.com